CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED
2017 APR -7  AM 9:52
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| LEON PERRY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. |
| | ) | 1:15-CV-112-BL |
| ERIC WILSON, Warden, | ) | |
| FCI-Petersburg Low, | ) | |
| | ) | |
| Respondent. | ) | Assigned to U.S. Magistrate Judge |

## OPINION AND ORDER [1]

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, Leon Perry, a federal prisoner who was confined at FCI-Big Spring in Big Spring, Texas, at the time the petition was filed.[2] In addition to the § 2241 petition and attachments, the Court has a response from the Respondent with an Appendix containing the documents related to the disciplinary proceedings challenged in this case. (Docs. 1, 10, 11.) After considering the pleadings and relief sought by Petitioner, and the applicable law, the Court has concluded that the § 2241 petition must be denied.

---

[1] As the parties have filed a consent to proceed before the United States Magistrate Judge, this magistrate judge can resolve this case under 28 U.S.C. § 636(c).

[2] The Bureau of Prisons website shows that Leon Perry is now incarcerated at the Federal Correctional Institution (FCI) Petersburg Low in Hopewell, Virginia. *See* www.bop.gov search of Leon Perry, No. 13004-021, last visited April 6, 2017. At the time he filed the petition, he was incarcerated at the Federal Correctional Institution (FCI) in Big Spring, Texas. In habeas corpus cases, the warden, as immediate custodian, is the only proper respondent. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-36 (2004). A transfer of a habeas corpus petitioner to incarceration in another district after the petition is filed ordinarily does not divest the court in which the petition was filed of jurisdiction. *Lee v. Wetzel*, 244 F.3d 370, 375 n.5 (5th Cir. 2001). Jurisdiction attaches on the initial filing and "was not destroyed by the transfer of petitioner and accompanying custodial change." *Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014). At the time Perry filed this § 2241 petition, therefore, he correctly named Myron L. Batts, Warden of FCI-Big Spring, as Respondent. The correct Respondent now, however, is Eric Wilson, Warden at FCI-Petersburg, and Perry's current custodian. The Clerk of Court should update the Respondent on the docket of this case.

## I. BACKGROUND

Leon Perry pled guilty to conspiracy to possess with intent to distribute, and to distribute, cocaine base and cocaine hydrochloride, in violation of 21 U.S.C. § 846 in the United States District court for the Southern District of Georgia. That court imposed a sentence of 240 months' imprisonment on December 10, 2007. *United States v. Perry,* No 6:06-CR-026-JRH-GRS (Judgment December 11, 2007).[3] Perry's current projected good conduct time release date is March 6, 2018. *See* www.bop.gov search of Leon Perry, No. 13004-021, last visited April 6, 2017.

On October 19, 2013, while incarcerated at FCI-Fort Dix, Perry received an incident report charging him with possession of a hazardous tool in violation of prohibited act code 108. (Respondent's Appendix, (Doc. 11) at 4, §§ 13-15.)[4] The reporting officer stated that when he and another employee were conducting a random "shakedown" (*i.e.,* search) of the two-man room to which Perry was assigned, he found a Samsung cellular telephone in a pocket of Perry's uniform, which was hanging on the side of Perry's locker.(*Id.* at 4, § 11.) The employee also stated that Perry's name and registration number were on the uniform. (*Id.*) An investigation of the incident report was completed that same day. The investigator advised Perry of his qualified right to remain silent. (Doc. 11, at 5, § 23.) Although Perry offered he "has no statement", he did acknowledge that his uniform had been hanging on the outside of his locker. (*Id.* at 5, § 24.)

---

[3]This Court takes judicial notice of the records of the United States District Court for the Southern District of Georgia in case number 6:06-CR-026-JRH-GRS. *See* Fed R. Evid. 201(b)(2) and (c)(1). The docket also shows that Leon Perry was granted a reduced sentence pursuant to the Executive Order of Clemency signed by President Barack Obama on August 30, 2016, and entered on the docket on September 14, 2016. *See* No. 6-06-CR-026-JRH-GRS, docket entry number 1656.

[4]The Court has herein cited to the document and page numbering assigned to the portions of the Appendix as scanned into the Court's electronic case filing system (ECF).

Perry then appeared before a Unit Disciplinary Committee (UDC) on October 25, 2013. (Doc. 11, at 4, § 21.) He provided a statement to the UDC, which was recorded as, "My uniform was down stairs in the dryer and I have no idea how my uniform got in my room. I went to eat and went to the dryer and my uniform was not there. When I went upstairs, the officer was shaking down the room." (*Id.* at 4, § 17.) The UDC referred the matter to a Disciplinary Hearing Officer (DHO) for disposition. (*Id.* at 4, § 18.) Perry was provided notice of his rights before the DHO. (Doc. 11, at 7.) Although he was provided the opportunity to request witnesses and a staff representative, Perry did not request a staff representative, but did request one witness. (Doc. 11, at 9.)

Initial Hearing

On November 14, 2013, Perry appeared before the DHO. (Doc. 11, at 11, § I(B).) He provided a statement to the DHO, which the DHO recorded as: "I went to eat chow. I came back. The uniform was in the laundry room when it was in my room. They were shaking down. They found the phone in my brown uniform in the dryer." (*Id.* at 11, § III(B).) In addition to the reporting employee's description of the incident and the investigation of the incident report, the DHO also considered: a memorandum written by the FCI-Fort Dix employee who was present when the reporting employee found the cellular telephone; a black and white photograph of the telephone; a chain of custody log for the telephone; and an Administrative Detention Order. (*Id.* at 11, § III(D); Doc. 11, at 15, 17, and 19.) Based on this evidence, the DHO concluded that Perry committed the disciplinary offense with which he was charged. (Doc. 11, at 12, § IV.) The DHO provided Perry a description of the evidence relied upon in reaching this conclusion, which included the written report of the reporting employee; Perry's own statement; and the picture of the cell phone. (*Id,* at 12, § V.) The DHO disallowed 40 days of Perry's good conduct time and imposed 15 days of disciplinary segregation,

suspended pending 90 days of clear conduct, and also suspended Perry's e-mail and telephone privileges for 90 days. (*Id.* at 12, § VI.) The DHO also provided the reasons for imposing these sanctions. (*Id.* at 12, § VII.)

Although the DHO's report reflected that Perry requested a witness, the report did not indicate whether the witness appeared at the hearing, whether the witness provided a statement, or whether or why the witness could not be called. (Doc. 11, at 11, § III (C).) While Perry appealed the imposition of the disciplinary punishment through the BOP's administrative remedy process, he was transferred from FCI-Fort Dix to FCI-Big Spring. And, while Perry was housed at FCI-Big Spring, another DHO for FCI- Big Spring reheard the disciplinary case.

<u>First Rehearing</u>

To initiate the re-review of the disciplinary charge at FCI-Big Spring, Perry first again appeared before a UDC at FCI-Big Spring. This review was memorialized by additional darker handwritings added to the original Incident Report. (Doc. 11, at 4, §§ 17-21.) During the appearance before the FCI-Big Spring UDC, Perry confirmed that his statement was the same as it had been when he appeared before a UDC at FCI-Fort Dix. (*Id.* at 4, § 17 [darker handwriting].) The FCI-Big Spring UDC again referred the incident report to review by a DHO. (*Id.* at 4, §§ 18-20 [darker handwriting].) Perry was again advised of his rights before the DHO and was also again afforded the opportunity to request staff representation and witnesses. (Doc. 11, at 21; 23.) Perry again declined staff representation, but also again requested one witness, who was located at FCI-Fort Dix. (*Id.* at 23.)

Perry then appeared before the FCI-Big Spring DHO on May 12, 2014. (Doc. 11, at 25, § I (L).) Perry provided a statement to the DHO, which the DHO recorded as:

4

> I lived on the third floor. My laundry was being done on the first floor. When I came back, my uniform wasn't in the dryer. When I went to my room, they were shaking down so I went to the TV room. That's when I saw [Perry's witness] and he said he had heard someone call my name. I don't know why someone would set me up. I lived in preferred housing and a lot of people were jealous.

(*Id.* at 25, § III (B).) Perry's witness provided a written statement to the DHO, which read, "I've never seen inmate Perry with a cell phone or heard of him having a cell phone. I have no idea if he had one or if he didn't." (Doc. 11, at 26, § III(C)(5).) In addition to the reporting employee's account of the incident, Perry's statement, and the statement of Perry's witness, the DHO also considered the memorandum provided by the FCI-Fort Dix employee who was present when the reporting employee found the telephone and the photograph of the telephone. (*Id.* at 26, § V.)

The DHO found that Perry committed the disciplinary infraction with which he had been charged. (*Id.* at 26, § IV.) The DHO provided Perry a description of the evidence relied upon in reaching this conclusion:

> [T]he written statement of Lieutenant Castellanos, dated October 19, 2013, stating he and Counselor Holterman were shaking down room 322 when they found a black and blue Samsung flip phone in your uniform pocket. Your uniform was hanging on the side of your locker and had your name and number on it.
>
> The memorandum dated October 19, 2013, written by Counselor Holterman, was relied upon. He stated he was conducting shakedowns with Mr. Castellanos and found one black and blue Samsung cell phone in room 322.
>
> The photo of the cell phone, dated October 19, 2013, was relied upon.
>
> At the DHO hearing, you denied possessing the cell phone when you stated you had left your uniform in the dryer and when you came back it was no longer in the dryer. Your witness, [redacted], provided a written statement saying he does not know whether or not you had a cell phone.
>
> In deciding this issue, I did not find your defense credible. It is unlikely someone would take your uniform out of the dryer, hang it on the side of your locker, and place a cell phone in the pocket. You were asked why someone would set you up and could provide no reason other than some people were jealous of your preferred

housing. Other inmates also had preferred housing and there would be easier methods of setting them up than retrieving their uniform from a dryer, hanging it on their locker, and putting the cell phone in the pocket. I found the written statement of the reporting staff member, the supporting memorandum, and the photo, sufficient evidence to uphold you have violated Code 108, Possession, Manufacture, or Introduction of a Hazardous Tool.

(Doc. 11, at 26-27, § V.) As a result of this re-hearing, the DHO for FCI-Big Spring upheld the sanctions which the DHO at FCI-Fort Dix had imposed. (Doc. 11, at 27, §VI.)

Second Rehearing

Perry again appealed through the BOP's administrative remedy process, and the DHO for FCI-Big Spring again reheard the case in November 2014. Prior to the DHO re-hearing, Perry, for the third time, again appeared before a UDC. This process was again recorded on the initial Incident Report, this time in smaller handwriting of the October 15, 2014 review. (Doc. 11, at 4, §§ 17-21[smallest handwriting].) Perry confirmed that his statement was the same as it had been when he appeared before the UDC at FCI-Fort Dix. (*Id.* at 4, § 17 [smallest handwriting].) The UDC again referred the incident report to the DHO. (*Id.* at 4, §§ 18-20 [smallest handwriting].) Perry was again advised of his rights in the upcoming appearance before the DHO and again afforded the opportunity to request staff representation and witness. (Doc. 11, at 29; 31.) As before, Perry declined staff representation, but requested one witness from FCI Fort Dix. (*Id.*)

On November 3, 2014, Perry again appeared before the FCI-Big Spring DHO. (Doc. 11, at 33, § I(L).) The DHO considered Perry's statement from the first rehearing. (*Id.* at 33, § III (B).) Perry also provided an additional statement at this rehearing, which the DHO recorded as "I am still trying to get more proof the phone didn't belong to me." (*Id.*) Perry's witness again provided a written statement, which differed from the statement the witness provided for the first rehearing. His new statement said, "I saw an inmate enter his room. I thought he was dropping off Perry's laundry

and never thought anything of it because inmates did that quite often. I told Ms. McKinnon that same thing. I didn't pay attention to how long that inmate stayed in Perry's room or what he did in there." (Doc. 11, at 34, § III(C)(5).) In addition to the reporting employee's account of the incident, the memorandum provided by the FCI-Fort Dix employee who was present when the reporting employee found the telephone, and the photograph of the telephone, the DHO considered both of Perry's statements and both statements made by Perry's witness. (Doc. 11, at 34-35, § V.)

Once again, after this second re-hearing (third DHO hearing overall) the DHO found Perry committed the disciplinary infraction of possession, manufacture, or introduction of a hazardous tool. (*Id.* at 34, § IV.) The DHO explained to Perry why she had conducted the second rehearing:

> A rehearing was conducted on May 12, 2014, as witness [redacted] had not been called at the original hearing. This [second] rehearing was conducted based on an appeal of the [first] rehearing which mistakenly reviewed the original DHO report instead of the rehearing DHO report and believed witness [redacted] still needed to be called.

(*Id.* at § V.) The DHO also provided Perry a description of the evidence relied upon in reaching the decision that he had, while at FCI-Fort Dix, committed the prohibited act of Code 108, Possession, and it was a similar list to that previously considered by the DHO in the prior re-hearing. (*Id.* at 34-35, § V.) The DHO for FCI-Big Spring again upheld the sanctions imposed by the FCI- Fort Dix DHO. (*Id.* at 35, § VI.)

## II. CLAIMS

In this § 2241 petition, Perry contends generally that the his right to due process of law was violated during a disciplinary hearing and two rehearings which resulted in the disciplinary penalty of loss of 40 days of good time. (Doc. 1, at 10-11.) More particularly, Petitioner raise several specific challenges to the underlying disciplinary proceedings. Petitioner Perry contends that the

initial DHO refused to interview a witness, denied his request for telephone records, and relied on a statement by a confidential informant that was not revealed to him. He also asserts that he was denied due process because he was not presented evidence within 24 hours of the DHO hearing, he was found guilty of possessing a cell phone in a common area accessible by more than 2,000 inmates, and he was not allowed to face his accuser in both the original hearing and on rehearing. (Doc. 1, at 5-7, 12-14.)

III.     EXHAUSTION

The Respondent conceded that Petitioner Perry has exhausted his administrative remedies with respect to the disciplinary action challenged in this case. (Doc. 11, at 12.)

IV.     ANALYSIS

In the context of a prison disciplinary proceeding resulting in the loss of good time credits, constitutional due process requires that a prisoner at a minimum receive (1) written notice of the charges against him at least twenty-four hours prior to the disciplinary hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense, and (3) a written statement from the factfinder that includes the evidence relied on and the reasons for the disciplinary action taken. *Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

Upon review of a prison disciplinary action, a court must simply consider whether the decision of the prison authority was supported by "some facts" or "any evidence at all." *Smith v. Rabalais,* 659 F.2d 539, 545 (5th Cir. 1981). Due process does not require that the evidence in such a proceeding eliminate all other possible conclusions. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead,

the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. That is, if there are "some facts" or "any evidence at all" that support the action taken by prison officials, their decision must be upheld on federal habeas review. *Smith*, 659 F.2d at 545. The reporting staff member's incident report, standing alone, constitutes some evidence. *Hudson v. Johnson*, 242 F.3d 534, 536-537 (5th Cir. 2001). "Federal courts cannot retry every prison disciplinary dispute; rather the court may only act where arbitrary or capricious action is shown." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994).

In the instant case, there was sufficient evidence to support the findings of both DHOs after all three hearings. As indicated in the report of the initial DHO at FCI-Fort Dix, he relied upon the reporting employee's written description of the incident, which summarized the discovery of the cellular telephone in the pocket of Perry's uniform at the time it was hanging in Perry's quarters; a memorandum from the FCI-Fort Dix employee who was present during the search, confirming the discovery of the telephone; a photograph of the telephone; and a chain of custody form for the telephone. (Doc. 11, at 12.) As indicated in her reports, with the exception of the chain of custody form, the DHO at FCI- Big Spring DHO relied upon the same evidence. Furthermore, the DHO at FCI- Big Spring also considered Perry's statements and the statements of Perry's witness, but found that these statements were outweighed by the other evidence and that Perry's defense was not credible. (Doc. 11, at 26-27; 34-35.)

Perry nonetheless contends he was denied due process in a number of different ways. First, he contends it was improper for the DHOs to conclude that he possessed the telephone because a large number of other inmates had access to the room in which he lived and in which FCI Fort Dix staff found the telephone. "A person has constructive possession if he knowingly has ownership, dominion,

or control over the contraband itself or over the premises in which the contraband is located." *United States v. Fambro,* 526 F.3d 836, 839 (5th Cir. 2008) (quoting *United States v. McKnight*, 953 F.2d 898, 901 (5th Cir. 1992) (internal citations omitted). The phone was found in Perry's uniform pocket hanging on the side of his locker. This is certainly evidence that he was in constructive possession. *See generally Osobor v. Pearson,* No.5:08-CV-180 DCBMTP, 2009 WL 2778317, at * (S.D. Miss. Aug, 24, 2009) (finding that evidence that officers found cell phone in vent behind insulation in inmate's cell was evidence he constructively possessed cell phone to support a violation of Code 108). Further, other courts have recognized that an inmate who shares living quarters with other inmates may be held responsible for possession of a hazardous tool found concealed in the living quarters and accessible to all of the inmates who live there. *See Pruitt v. Martin,* 582 F. App'x 319, 320 (5th Cir. 2014) (cell phone found under pillow on random search); *see also Flannagan v. Tamez,* 368 F. App'x 586, 588, and n. 6 (5th Cir. 2010) (cell phone found in wall of five-man cell but near bunk of petitioner inmate); and *Buitrago v. Mejia,* No.3:14-CV-0-475, 2015 WL 5092603, at *3 (N. D. Tex. Aug. 28, 2015) (evidence that cell phone was found in inmate's cubicle within shared living space with three other prisoners sufficient to support findings of constructive possession).

Second, Perry alleges that the DHO at FCI-Fort Dix denied access to potentially exculpatory evidence in the form of telephone records he requested. Perry, however, does not identify how any records he might have requested would have been exculpatory, nor does he identify the type of telephone records he claims to have requested. Additionally, the record of Perry's original hearing and two rehearings do not support his claim. There is nothing in the record that reflects Perry requested any exculpatory evidence. Indeed, Perry does not suggest that he made the request at either of the two rehearings or that such requests were denied. He charges only that the DHO at FCI-Fort Dix denied

the request. Furthermore, on *three* separate occasions, Perry was afforded the opportunity to request and obtain the assistance of a staff representative, who could have assisted Perry by attempting to obtain evidence which was not readily available to Perry. But Perry declined staff representation at each instance. (Doc. 11, at 9, 23, 31.)

Third, Perry claims that the FCI-Fort Dix DHO erred by refusing to interview Perry's witness. The record does not disclose whether the FCI-Fort Dix refused to call Perry's witness or simply failed to record any statement that the witness might have provided. Even assuming that the FCI Fort Dix-DHO erred by refusing to call Perry's witness, any such error was rendered harmless when the DHO at FCI-Big Spring received and considered statements from Perry's witness at both of the rehearings.

Fourth, Perry claims that the DHOs improperly relied upon evidence provided by a confidential informant whose identity was not disclosed to Perry, thereby denying Perry the right to confront his accuser. Prisoners, however, do not have the right to confront and cross-examine witnesses at prison disciplinary proceedings. *See Wolff,* 418 U.S. at 567-68; *see also Baxter v. Palmigiano,* 425 U.S. 308, 320-23 (1976); *McKoy v. Fox,* 587 F. App'x 802, 804 (5th Cir. 2014). Furthermore, this claim is refuted by a review of each of the DHO reports. In each DHO report, both the FCI-Fort Dix and FCI-Big Spring DHO entered "N/A" (*i.e.,* not applicable) in section III(E) of each report, indicating that they did not rely upon any confidential information. *See* Doc. 11, at 12; § III(E); 26, § III(E); 34, § III(E).

In his final challenge, Perry asserts that he was denied due process because he was not presented evidence within 24 hours of the DHO hearing. But *Wolf v. McDonnell* does not provide for such a right but instead guarantees the right to at least 24 hours advance written notice of the charges, not the evidence that will be presented. *See Wolff,* 418 U.S. at 564-65. In any event, Perry has not

11

shown what evidence he was not provided, or how it would have affected the outcome of the hearing.

In sum, the disciplinary process and the DHO's reports and findings provided to Perry the requisite measure of process guaranteed to him under *Wolff* and *Hill,* and none of his specific grounds for relief undermine that determination.

## V. CONCLUSION

It is therefore **ORDERED** that the petition for writ of habeas corpus under 28 U.S.C. § 2241 is **DENIED**.

Signed April __7__, 2017.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE